PETRATOS, Admr., Appellant,

v.

MARKAKIS, a.k.a. Makakis, et al., Lakewood Hospital, Appellee.

[Cite as *Petratos v. Markakis* (1993), 92 Ohio App.3d 626.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61377.

Decided March 15, 1993.

*William J. Novak,* for appellant.

*Weston, Hurd, Fallon, Paisley & Howley* and *Dierdre G. Henry,* for appellee.

PATRICIA A. BLACKMON, Judge.

This is an appeal from a decision by the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee Lakewood Hospital ("appellee") against plaintiff-appellant Erasmia Petratos ("appellant") as Administrator of the estate of Fotios Petratos. For the reasons set forth below, we affirm. The apposite facts follow.

Appellant filed a complaint for negligence, wrongful death, and medical malpractice against Aristotle Markakis, M.D., James Bekeny, M.D., and appellee. Appellee filed a motion for summary judgment on the grounds that its employees did not fail to exercise the appropriate standard of care owed to Fotios Petratos; that it was not liable for the negligence of private physicians; if there was a duty to monitor and intervene, appellee fulfilled that duty. Appellant filed a brief in opposition on the grounds that a hospital, once it has knowledge of the negligence of a staff physician, has a duty to discontinue or monitor the care of a patient in its hospital and breaches that duty, when it fails to monitor. The motion for summary judgment was granted.

The facts of this case were undisputed. Fotios Petratos, deceased, was hospitalized at appellee Lakewood Hospital from July 4, 1987 until his death on October 30, 1987. Dr. Markakis, a staff physician at the hospital, performed surgery on Petratos on July 4, 1987. Dr. James R. O'Malley, Chief of Surgery, saw Petratos every day after the surgery. Petratos was in the intensive care unit. Dr. O'Malley noted that no endoscopy had been performed and questioned Dr. Markakis as to why. In-house surgeons advised Dr. O'Malley that Petratos was developing signs of problems; Dr. O'Malley in turn ordered Dr. Markakis to get a surgical consultant. Dr. Markakis chose Dr. Bekeny, another staff physician. Dr. Bekeny assisted Dr. Markakis in all subsequent treatment decisions.

Petratos subsequently underwent several more surgeries. During surgery on August 7, 1987 by Drs. Bekeny and Markakis, Petratos' colon was accidentally

perforated. No colostomy was created to remedy the problem caused by the perforated colon. A colostomy would have been consistent with accepted standards of care. Dr. O'Malley advised Drs. Bekeny and Markakis to exteriorize the colon. Surgery was performed on August 18, 1987, and a colostomy was performed on August 25, 1987, which was too late. Surgery was performed again on September 28, 1987, but Petratos died on October 30, 1987.

Under the bylaws of the hospital: " [T]he principal purpose of the hospital is to provide patient care at a level of quality and efficiency consistent with the generally accepted standard" (see Preamble); each department chairman had the duty to maintain continuing review of the professional performance of staff physicians (Sections 11.3.1, 4.4, Article XI); and he also had the authority to summarily suspend staff physicians to protect the life of a patient or reduce substantial likelihood of injury to them. (See Section 8.2.1, Article VIII).

Upon those facts, appellant assigns two errors from the trial court's summary judgment:

"Once negligence occurred, defendant hospital had a duty to monitor the care of the patient and intervene if necessary.

"The hospital has a nondelegable duty to monitor a patient's care and intervene if necessary once negligence has occurred."

Appellant's assignments of error are not well taken and are overruled.

■ The issue before this court is whether as a matter of law summary judgment was proper. We conclude that it was proper in light of *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038. In that case the Supreme Court held the following at paragraph one of the syllabus:

"A hospital's granting of staff privileges to an independent private physician, which the hospital may later revoke under its review procedures, does not establish the requisite level of authority or control over such physician to justify imposing liability against the hospital under the doctrine of *respondeat superior.*"

Appellant argues that although *Albain* held that "hospitals do not have a nondelegable duty to assure the absence of negligence in the medical care provided by private independent physicians granted staff privileges by the hospital," they have a duty to monitor and intervene once negligence occurs. See *Albain* at 261–262, 553 N.E.2d at 1048.

The issue before this court is what is the hospital's duty once it knows that the staff physician has been negligent. Appellant argues that the appropriate resolution is to place a duty to monitor and intervene on the hospital as opposed to the inappropriate action of allowing a hospital the non-response approach, *i.e.*, standing by and watching a patient die.

In our reading of *Albain,* it is clear that the court resolved this issue in the following statement at 259, 553 N.E.2d at 1046:

"We are aware that a number of our sister jurisdictions have expanded the independent duty of hospitals so as to require them to totally ensure the patient's safety while at the hospital. This expansion of a hospital's duties, including a duty to oversee a physician's care of individual patients and a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patient, has progressed in varying degrees, under the moniker of 'corporate negligence,' towards imposing strict liability upon hospitals. See, generally, Note, *supra,* 17 St. Mary's L.J. at 558–559. We are not convinced of the wisdom of such expansive liability and, accordingly, we hold that a hospital may be held directly liable for the malpractice of an independent physician with staff privileges only to the extent discussed below."

Finally, appellant argues that her request for pro-active treatment on the part of the hospital is appropriate and not expansive. We disagree. It is clear that the duty to prevent, intervene, monitor and oversee are contra-indicative to the *Albain* opinion and constitute the corporate liability or negligence rule.

Furthermore, *Albain* does provide for hospital liability for the negligence of physician staff members, who are treated as independent contractors. The court stated at 257, 553 N.E.2d at 1044:

"First, an employer may be directly liable for injuries resulting from its own negligence in selecting or retaining an independent contractor. Second, an employer may be held vicariously liable for the negligence of an independent contractor performing certain "non-delegable duties" which are imposed by statute, contract, franchise or charter, or by the common law. Third, an employer may be held vicariously liable for the negligence of an independent contractor under the doctrine of agency by estoppel which requires a showing of induced reliance by a third person upon an ostensible agency." (Citations omitted.)

Appellant argues that appellee hospital is liable under the first and second exceptions. We disagree.

■ A hospital has a duty only to grant and to continue staff privileges to competent physicians. *Albain* at 257–258, 553 N.E.2d at 1045. When the continuation of staff privileges is concerned, "once a competent and careful physician has been granted staff privileges, the hospital will not thereafter be liable unless it had reason to know that the act of malpractice would most likely take place. That is, where a previously competent physician with staff privileges develops a pattern of incompetence, which the hospital should become aware of

through its peer review process, the hospital must stand ready to answer for its retention of such physician." *Id.* at 258, 553 N.E.2d at 1045.

"Nor is a hospital required to constantly supervise and second-guess the activities of its physicians, beyond the duty to remove a *known incompetent.*" *Id.* at 259, 553 N.E.2d at 1046. Hospitals are not responsible for deciding which treatment is appropriate or whether surgery is necessary. "In short, the hospital is not an *insurer* of the skills of physicians to whom it has granted staff privileges." (Emphasis *sic.*) *Albain* at 259, 553 N.E.2d at 1046.

In this case, Markakis was not a "known incompetent" at the time he failed to perform an endoscopy. Nonetheless, O'Malley requested that Markakis get a surgical consultant. There is no evidence that Markakis' choice, Bekeny, was a "known incompetent" at the time in which one of them negligently perforated Petratos' colon.

■ Appellant argues in the second assignment of error that appellee is liable under the nondelegable duty rule. We again disagree. In *Albain,* the Supreme Court succinctly stated at 261–262, 553 N.E.2d at 1048:

"The practice of medicine in a hospital by an independent physician with staff privileges does not involve the type of risks and precautions required as contemplated by the 'non-delegable duty' exception. Where the hospital has exercised its independent duty to grant and continue staff privileges only to competent and careful physicians, any remaining precautions attendant to the non-negligent practice of medicine are the sole responsibility of such independent private physician. Accordingly, we hold that hospitals do not have a nondelegable duty to assure the absence of negligence in the medical care provided by private independent physicians granted staff privileges by the hospital."

Thus, the nondelegable duty rule does not apply to appellee as a hospital for the negligence of physicians to whom it grants staff privileges.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Dyke, C.J., and James D. Sweeney, J., concur.